1

2

3

4

UNITED STATES DISTRICT COURT
5
WESTERN DISTRICT OF WASHINGTON
6
AT SEATTLE

7   CASEY L.,

8                          Plaintiff,            CASE NO. C17-5942-MAT

9          v.

10  NANCY A. BERRYHILL, Deputy          ORDER RE: SOCIAL SECURITY
    Commissioner of Social Security for     DISABILITY APPEAL
11  Operations,

12                         Defendant.

13

14          Plaintiff Casey Lee proceeds through counsel in his appeal of a final decision of the

15  Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

16  plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income

17  (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's

18  decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

19                      **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1975.[1]  He completed high school and previously worked as

21  a retail manager, aquarist, pet store sales person, carpet cleaner, sales clerk, and children's

22

    _____
23          [1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

    ORDER
    PAGE - 1

wildlife/after school teacher.  (AR 30, 246.)

Plaintiff protectively filed DIB and SSI applications in January 2015, alleging disability beginning December 31, 2011. (AR 205-12.)  He remained insured for DIB through March 31, 2012 and was required to establish disability on or prior to that "date last insured" to receive DIB. *See* 20 C.F.R. §§ 404.131, 404.321.  On May 4, 2016, ALJ Cynthia D. Rosa held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 39-74.)  On January 6, 2017, the ALJ issued a decision finding plaintiff not disabled.  (AR 19-32.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on September 15, 2017 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found severe plaintiff's status post surgeries at L4-L5 for a herniated disc, lumbar spondylosis, and degenerative disc of the cervical spine with spondylosis and radiculopathy.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform less than the full range of sedentary work, defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) as work involving lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, with walking and standing required occasionally, i.e., up to two hours in an eight-hour workday. He could occasionally climb stairs and ramps, but never ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; avoid concentrated exposure to extremes of cold and vibrations; work at tasks where he can alternate between sitting and standing every thirty minutes; and occasionally reach overhead. With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a document preparer, addressor, and callout operator.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of

which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error in a disparity between the hypothetical question proffered to the VE and the RFC in the decision, in the assessment of his testimony and a physician's opinion, and resulting errors at step four and five. He requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## RFC and Hypothetical to VE

Both the RFC and hypothetical proffered to a VE must include all of the claimant's functional limitations supported by the record. *See Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009), and *Thomas*, 278 F.3d at 956. A VE's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding a claimant can perform jobs in the national economy. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). *Accord Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001) ("Hypothetical questions asked of the [VE] must 'set out all of the claimant's impairments.' If the record does not support the assumptions in the hypothetical, the [VE's] opinion has no evidentiary value.") (quoting *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1278, 1279 (9th Cir. 1987)).

The ALJ assessed an RFC of less than the full range of sedentary work, including a limitation to walking and standing up to two hours in an eight-hour workday, and the ability to "work at tasks where he can alternate between sitting and standing every thirty minutes." (AR 22.) In the hypothetical proffered to the VE at hearing, the ALJ asked about an individual who was able to perform sedentary work and "would need to alternate sitting standing at about say 30-minute intervals." (AR 70-71.)

ORDER
PAGE - 4

Plaintiff construes the RFC limitation to sitting and standing in thirty minute intervals to require a total amount of standing for four hours: " – sitting for a 30 minute interval, standing for a 30 minute interval, standing for a 30 minute interval, sitting for another interval, standing for another interval, and so on, leaving an equal 4 hours each for standing and sitting at the end of the day." (Dkt. 9 at 5.) He argues this necessarily contradicts the limitation to standing/ walking up to two hours and suggests the ALJ misunderstood the limitations assigned. He, at the same time, maintains the hypothetical at hearing was less restrictive than the RFC by contemplating four hours of standing in thirty minute intervals, and that the VE identified jobs that required standing up to four hours in thirty minute intervals.

Plaintiff's reading of the RFC and hearing testimony is not reasonable. The ALJ explicitly found plaintiff capable of less than a full range of sedentary work "with walking and standing required occasionally, i.e., up to two hours in an eight-hour workday." (AR 22.) She proceeded to outline additional limitations, including that plaintiff could "work at tasks where he can alternate between sitting and standing every 30 minutes." (*Id*.) That is, while plaintiff could stand and walk up to two hours, he required the ability to alternate between sitting and standing every thirty minutes within that two-hour total. The ALJ did not misunderstand or assess conflicting limitations as to the total amount of time plaintiff could stand or walk. She reiterated the limitation to two hours total of standing and walking in noting her agreement with the opinions of the State agency medical consultant. (AR 29-30.)

Nor was there error in the hypothetical, reliance on the VE's testimony, or at step five. At hearing, the ALJ identified an individual able to perform sedentary work, but with additional limitations, including the need to alternate sitting and standing at thirty minute intervals. (AR 70-71.) While the ALJ used the term "sedentary," rather than "less than sedentary" as stated in the

ORDER
PAGE - 5

decision, the amount of standing and/or walking remained the same: occasional standing and/or walking, for no more than two hours total in a day. 20 C.F.R. §§ 404.1567(a), 416.967(a) ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."); Social Security Ruling (SSR) 96-9p ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 'Occasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.") The ALJ, in any event, necessarily proffered a hypothetical to less than sedentary work by including the need to alternate between standing and sitting. SSR 96-9p ("An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded.")

The VE identified three sedentary jobs plaintiff could perform with the additional limitations assessed, including alternating sitting and standing at thirty minute intervals. (AR 70-71.) These sedentary jobs by definition required no more than a total of two hours standing or walking. *See* Dictionary of Occupational Titles (DOT) 249.587-018 (document preparer); DOT 209.587-010 (addressor); DOT 237.367-014 (callout operator). The VE also qualified his testimony by noting the ability to alternate sitting and standing is not addressed in the DOT and was based on his professional experience, education, and past completion of labor market research and development of job analyses. (AR 72-73.) The VE clearly understood both the limitation to sedentary work, with no more than two hours total of standing or walking, and opined the sedentary positions identified could be performed with the need to alternate standing and sitting within that total at thirty-minute intervals. Plaintiff's assertion of error lacks merit.

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[2]  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).  *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence in the record. (AR 23.)  The record did not substantiate plaintiff's allegations to the degree alleged and his testimony of sitting for thirty minutes at a time with the need to shift positions, standing for one hour at a time, and walking one mile at a time supported an ability to perform sedentary work. The Court finds specific, clear, and convincing reasons provided in support of these conclusions.

A.    Medical Evidence

The ALJ provided a lengthy, detailed discussion of plaintiff's testimony in conjunction with the medical evidence.  (AR 23-28.)  She contrasted plaintiff's testimony he needed to lie down three to five hours a day, with an absence of such reporting prior to February 2016, a

---

[2] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* SSR 16-3p, case law containing that term remains relevant.

supportive treating physician opinion, or any observation of body deconditioning; noted the little treatment received between 2011 and early 2015, use of limited medication, and average level of pain; and found the earlier examination notes to support no more than subjective complaints of intermittent lower extremity numbness. (AR 23-24 (citing AR 477-525, 532-78, 608-30).) While testifying to a similar level of debilitating back pain and work restrictions since 2010, plaintiff had continued working after back surgeries and until the end of 2011, and treatment between November 2011 and prior to January 2015 was insignificant. (AR 25 (citing AR 402 (November 2011: prescription of marijuana for chronic pain); AR 404 (January 2013: chronic cough and sinus congestion); AR 405 (April 2013: skin rash); AR 539 (May 2014: skin rash; "'excellent'" range of motion of his lumbar spine).) He reestablished care for his back in early January 2015, while working as a radio advertisement sales person and noting worsened pain the prior six weeks. (AR 25-26 (citing AR 364-70, 374).) The ALJ described objective findings and testing associated with plaintiff's back (AR 372, 375), Dr. Clyde Carpenter's recommendation of surgical intervention (AR 373), and plaintiff's later, June 2015 report of doing fairly well with home stretching and a walking program and his desire "to resume normal activities such as scuba diving and skydiving." (AR 481-82.) In September 2015, Dr. Carpenter noted "back pain which is limiting his ability to get back to work", but did not specify a degree or type of limitation and recommended a complete discectomy. (AR 26, 483-84 (finding normal gait, forty degrees lumbar flexion, ten degrees extension and lateral bending, four/five motor strength on left and full strength on right, and diminished sensory testing in L5 dermatome).)

The ALJ contrasted plaintiff's testimony of sciatica with a February 2016 treatment note indicating low back pain without sciatica, and his testimony of difficulty driving with the absence of any such reporting prior to February 18, 2016, when he reported worsening symptoms in the

preceding five months. (AR 26, 608-11, 623.) "Most importantly, the claimant has had about four doctor visits since October 2015, which suggests that his condition has been stable and has not required aggressive regular medical care. " (AR 26.) That plaintiff has not had corrective or revision surgery relating to the lumbar spine after 2010 showed his back disorder has not been as debilitating and restrictive as described at hearing.

The ALJ identified a number of inconsistencies regarding plaintiff's alleged neck injury. (AR 26-27.) Plaintiff, for example, alternatively attributed the injury to incidents in April 2015 and September 2015, denied cervical or thoracic pain in an April 2015 emergency room visit, reported fourteen years of neck pain to one provider and a year of neck pain to another, and did not receive aggressive treatment even when receiving care for his lumbar spine. (*Id.* (citing AR 388-401, 477-92, 514-25, 575).) These inconsistencies put the veracity of plaintiff's subjective history into question and did not support severe disabling cervical disc disease. (AR 27.)

The ALJ also addressed the objective evidence associated with neck pain. (*Id.*) For example, in September 2015, Dr. David Hanscom considered x-ray findings, conducted an examination, found no medical need for lumbar or cervical surgery, and recommended a structured rehabilitation program. (AR 576-78 (intact motor strength and sensory function in extremities, reflexes symmetric and equal bilaterally, limited range of motion in lumbar spine, normal gait, intact tandem gait).) These findings and observations did not support debilitating cervical or lumbar radiculopathy at least through the end of September 2015. (AR 27.) Despite significant findings in an October 2015 cervical spine MRI and the recommendation of surgery, a subsequent postural evaluation was normal except for a reduced range of motion in the cervical and lumbar spines, some cervical tenderness, and other mild findings (AR 519-22), and December 2015 EMG and nerve conduction studies were essentially normal and showed no finding of cervical

radiculopathy (AR 524-27, 582-84). Finally, while Dr. Hanscom diagnosed cervical radiculopathy in March 2016, he advised the issue would likely resolve on its own and did not find surgery necessary. (AR 621-25.) The evidence suggested a mild cervical impairment that would resolve with conservative care, but the ALJ considered the condition in formulating sedentary exertional, postural, and manipulative limitations. (AR 28.)

Plaintiff asserts that examining physician Dr. Thomas Gritzka, who found plaintiff's need to lie down four to six hours a day medically reasonable, reviewed and analyzed the records with greater professional competence than the ALJ. (AR 604-07.) He suggests providers may not have written down all of his statements and that the absence of such notation does not mean he was not lying down. Plaintiff also asserts he did not always have medical insurance to seek the visits he needed and that his inability to afford some treatment should not be held against him.

The Court finds no reversible error established. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ also properly considers inconsistencies in a claimant's reporting, *Greger v. Barnhart*, 464 F.3d

968, 972 (9th Cir. 2006), and evidence associated with treatment, §§ 404.1529(c)(3), 416.929(c)(3), SSR 16-3p, including unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The existence of a medical opinion supporting plaintiff's testimony does not suffice to demonstrate error. "[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). *Accord Carmickle*, 533 F.3d at 1164; *Thomas*, 278 F.3d at 956-57. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner's decision to deny benefits is disturbed "only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter v. Colvin*, 806 F.3d 487, 491 (9th Cir. 2015) (quoted sources and internal quotation marks omitted). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999). Plaintiff offers a contrary interpretation of the medical evidence as it relates to one of his alleged symptoms. Because the ALJ's interpretation is at least equally rational and is supported by substantial evidence, it will not be disturbed.

Plaintiff's argument regarding insurance has some substance. At hearing, plaintiff could not recall whether he had medical insurance "the entire time since 2011," testified he had "state medical insurance for part of the time[,]" but did not have it when he "worked for Olympia Cross." (AR 61.) He added:

> All those years I didn't have any medical insurance, so -- . . . A lot
> of the reason for that when I'm not going back to the doctor and
> whatnot was because I didn't have medical insurance and I couldn't

> pay for it back then. And then when I did go back to the doctor, they just said that they wanted me to go back in for surgery and I just did not want to go through what I've been going through again.

(AR 61-62.) This testimony suggests plaintiff did not have medical insurance for at least part of the relevant time period. (*See, e.g.*, AR 224, 232 (indicating work for Olympia Cross in 2011).)

The ALJ must consider reasons for a claimant's failure to seek or follow through with treatment. SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.") *But see Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (a failure to assert a reason or a finding a reason "'is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). In this case, there is no indication the ALJ considered whether the absence of treatment resulted from a lack of insurance. The ALJ did, however, consider that plaintiff received treatment between 2011 and early 2015, but that his medical visits were sporadic, involved insignificant treatment addressing other, non-severe conditions, and did not include reports of back pain. (AR 24-25.) As plaintiff observes, the fact a person sought some treatment does not mean the person could afford all treatment. *See Trevizo*, 871 F.3d at 681 (that a claimant could afford doctor visits, did not mean "she could also afford doctors' visits coupled with expensive pharmaceuticals"; finding nothing to contradict claim claimant "was at times noncompliant with medication because she could not afford it.") (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.")) However, in this case, it was notable that, even when he did seek treatment, plaintiff did not report back pain. The Court, considering the ALJ's reasoning and decision as a whole, finds the ALJ's

failure to consider reasons for the failure to seek treatment harmless error. *Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case."); *Carmickle*, 533 F.3d at 1162-63 (where the ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless; the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error.")

B. <u>Activities</u>

The ALJ found plaintiff had been socially active and engaged in a "wide array of daily and social activities, all of which are inconsistent with his subjective allegations of the need to lie down for three to five hours a day. (AR 24.) Plaintiff has partial custody of his son, sees him every weekend, and testified to "doing as much as he can when he is with his son, taking him on nature walks and camping, which he felt was painful last summer." (*Id.*) He lives in a two-story apartment and had to climb stairs frequently; drives two to three times a week to grocery stores, a gas station, or to pick up his girlfriend; met his girlfriend at a New Year's Eve party two years ago; is a member of a professional skydivers association and attends their meetings regularly; gets together with family and friends for barbecues regularly; is an avid outdoor person, enjoys going fishing, camping, and hiking with his son, went camping last summer, and continues to fish with his son; drives a half hour to the ocean to fish; and often goes out to dinner.

In a function report, plaintiff reported taking care of his son and his pets, preparing daily meals for thirty minutes at a time, going outside at least once a day, and shopping in stores once a week. (AR 259-62.) He spent time with others and performs activities daily, such as walking,

hiking, fishing, and going out for dinner. His reports of finishing what he starts and following spoken and written instructions very well suggest an absence of debilitating pain that would affect focus and concentration. He does not use a medically prescribed assistive device for ambulation, despite his testimony of poor balance and the need to lie down most of the day. The ALJ found no rationale as to why plaintiff would not be able to perform at least sedentary work. She found the inconsistencies to show a tendency to magnify symptoms and the alleged need to lie down for a few hours a day inconsistent with the totality of the evidence, but accommodated his alleged need to shift positions every thirty minutes. (AR 24-25.)

Plaintiff argues his daily activities could be performed on his own schedule and without any minimal performance standard. He denies that even his seemingly robust activities, such as camping, fishing, driving, and taking care of his son, were not possible given his subjective claims, such as his need to lie down periodically. Plaintiff notes Dr. Gritzka was aware of his activities and nonetheless gave credence to his subjective claims by relying on findings on examination, as well as the most recent lumbar MRI scan and prior imaging studies.

An ALJ may weigh inconsistencies between a claimant's testimony and activities in assessing symptom testimony. *Bray v. Comm'r of SSA*, 554 F.3d 1219 (9th Cir. 2009). Activities may undermine testimony where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ here properly found plaintiff's activities inconsistent with his testimony as to the degree of his impairment. The activities extend considerably beyond what might reasonably be construed as typical activities of daily living. *Cf. Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise,

1  does not in any way detract from her credibility as to her overall disability. One does not need to

2  be 'utterly incapacitated' in order to be disabled.") (quoting *Fair*, 885 F.2d at 603). They are

3  rationally construed as inconsistent with a purported need to lie down three to five hours a day.

4  (AR 57-58.) Again, the mere fact Dr. Gritzka interpreted the record and his findings to support a

5  greater degree of impairment does not suffice to undermine the interpretation of the ALJ. The

6  ALJ's interpretation was at least equally rational and his conclusion in relation to plaintiff's

7  activities has the support of substantial evidence.

8  C.    Work Activities

9         The ALJ considered plaintiff's work activities during the time period in which he claims

10 disability, stating: "Working or looking for work while filing for disability benefits is also

11 inconsistent with allegations of total disability." (AR 25.) Plaintiff tried two jobs during the

12 adjudicative period, but had not been able to perform them on a consistent basis due to his physical

13 conditions. He performed a photography job for a friend for a couple of months, three or four days

14 a week, two hours a day, which he could not perform consistently, and a sales job for a radio station

15 for about three months in 2014, which he left because it required sitting for prolonged periods and

16 significant driving. He earned close to $2,600.00 in the fourth quarter of 2014 and first quarter of

17 2015. The ALJ found such recent work activities, although not at substantial gainful activity

18 levels, to be indicative of some ability to work. The ALJ, in so doing, provided an additional

19 specific, clear, and convincing reason for not accepting plaintiff's testimony as to the degree of his

20 limitation. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may consider a

21 claimant's work history in assessing symptom testimony); *Drouin v. Sullivan*, 966 F.2d 1255, 1258

22 (9th Cir. 1992) ("She was able to hold two previous jobs with a fair amount of success, and even

23 if those particular jobs are, as she claims, too taxing for her, the vocational counselor testified that

she is qualified for thousands of less strenuous jobs.")

## Medical Opinion

Plaintiff avers error in the assessment of the medical opinion of Dr. Gritzka. Dr. Gritzka reviewed records, conducted an examination, and rendered opinions dated April 19, 2016. (AR 593-07.)[3] He assessed plaintiff as able to perform less than sedentary work, for less than eight hours a day, with the need for three unscheduled absences and other limitations. (AR 604-07.) Plaintiff could, for example, stand and walk for two hours, sit for two hours and up to thirty minutes at a time, walk for twenty minutes at a time, and lift less than five pounds, and would be off task fifteen percent of more of a workday. These limitations were present since December 31, 2011. Dr. Gritzka also found plaintiff's current need for "four to six hours of recumbency" medically reasonable. (AR 604, 607.)

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester*, 81 F.3d at 830. Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff describes the opinion of Dr. Gritzka as uncontroverted, while the Commissioner points to Dr. Carpenter's opinions plaintiff could perform modified light work (*see* AR 447, 449,

---

[3] Plaintiff's counsel re-submitted a page of Dr. Gritzka's report because the original submission omitted two lines of text. (AR 606-07.)

451) as contradictory opinion evidence. Plaintiff rejects this contention, noting the short-term nature of Dr. Carpenter's opinions (*see id.* (limitations assigned between February 13 and April 13, 2015, June 16 and August 16, 2015, and August 31 and October 31, 2015)), and the finding of reviewing State agency physician Dr. Norman Staley that there was no opinion evidence (AR 98, 109). Dr. Staley, in May 2015, opined plaintiff could perform modified light work, with, *inter alia*, the ability to stand and walk for two hours, sit for about six hours, and occasionally perform postural activities. (AR 107-09.) Plaintiff denies the opinions of Dr. Staley constitute substantial evidence controverting Dr. Gritzka's opinion given that Dr. Staley did not examine plaintiff, review all of the evidence available for Dr. Gritzka's review a year later, and relied on the same findings as Dr. Gritzka, while coming to a different conclusion.[4]

The ALJ assigned the opinions of Dr. Carpenter limited weight "because the work restrictions, although consistent with the record, are temporary in nature." (AR 28.) However, while Dr. Carpenter did not indicate they were permanent, the work restrictions were "given consideration insofar as they are consistent with the longitudinal record." (*Id.*) The ALJ assigned the opinion of Dr. Staley significant weight, finding it consistent with the record, except for occasionally climbing ladders, ropes, and scaffolds because plaintiff's subjective complaints of intermittent extremity numbness and cervical radiculopathy required him to avoid unprotected heights and climbing ladders. (AR 29-30.) While finding plaintiff's substantial daily activities, normal EMG, innocuous MRI imaging of the cervical spine, fairly benign physical examinations,

---

[4] Plaintiff cites to *Orn*, 495 F.3d at 632, and *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1983), in support of this proposition. Those cases held: "When an *examining* physician relies on the same clinical findings as a *treating* physician, but differs only in his or her conclusions, the conclusions of the *examining* physician are not 'substantial evidence.'" *Orn*, 495 F.3d at 632-33 (emphasis added). The Court addresses below the standards for considering the opinion of a non-examining physician in relation to the opinion of an examining or treating physician.

and more recent conservative treatment supported a light RFC, the ALJ considered plaintiff's complaints of limited ability to lift and carry and recent diagnosis of cervical radiculopathy, and reduced the lifting and carrying restrictions to ten pounds maximum.  (AR 30.)

Nonexamining State agency medical consultants are highly qualified and experts in the evaluation of Social Security disability claims and, while not binding, their opinions must be considered.  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).  *Accord* SSR 17-2p (effective March 27, 2017; replacing SSR 96-6p)).  While the opinion of a nonexamining physician cannot, by itself, constitute substantial evidence justifying the rejection of the opinion of a treating or examining physician, *Lester*, 81 F.3d at 831, "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original)).  Stated another way, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The record in this case contains other evidence supporting the opinion of Dr. Staley, including, but not limited to the multiple short-term restrictions assessed by Dr. Carpenter, a treating physician.  Also, while Dr. Staley found no opinion evidence from any source to exist in May 2015, Dr. Carpenter had at that time issued only one of his three assessments.  (AR 447 (February 13, 2015), AR 449 (June 16, 2015), and AR 451 (September 2, 2015).)  The Court finds Dr. Gritzka's opinion contradicted by the opinion of Dr. Staley.  The Court further finds that, even if considered uncontroverted, the ALJ satisfied the clear and convincing standard.

The ALJ addressed the argument of plaintiff's representative that plaintiff had tried, but not been able to perform sedentary jobs due to his difficulty sitting for prolonged periods and need

to lie down throughout the day, and the supportive opinion of Dr. Gritzka. (AR 28.) Dr. Gritzka did not treat plaintiff, did review records and examine plaintiff, did so at the request of plaintiff's representative, and was not entitled to the weight accorded treating physicians. The opinion was "prepared to further the claimant's litigation interest." (*Id*.)

The ALJ contrasted Dr. Gritzka's opinion with plaintiff's substantial daily activities "(such as hiking, biking, fishing, walking, preparing meals, going out daily, driving three times a week, and taking care of his son)", mild objective findings from Dr. Hanscom, and light record between 2011 and early 2015, and found the evidence to support the ability to perform at least sedentary work. (*Id*.) Plaintiff's need to lie down for hours throughout the day did not match his active daily activities or have the support of objective findings. The ALJ found this part of Dr. Gritzka's opinion primarily based on plaintiff's subjective complaints.

The ALJ found the record to reflect more severe symptoms in 2015, but noted Dr. Carpenter at that time found plaintiff able to perform modified light work. (AR 28-29, 447-52.) She found inconsistency with Dr. Carpenter, whose opinion "is based on a longstanding doctor-patient relationship and is more credible." (AR 20.) She found inconsistency with the normal gait, intact motor strength, and fairly normal sensory functioning documented in the treatment notes and normal EMG/nerve condition studies. (*Id*. (citing AR 477-513, 526-28, 570-78, 608-30).) While Dr. Gritzka found positive Tinel's signs (AR 601), no such findings were documented by treating providers. The more recent treatment notes (AR 608-30), along with the EMG/nerve condition studies (AR 526-28), showed plaintiff more capable than Dr. Gritzka described. (AR 29.) Considering the normal EMG, self-healing soft tissue tear in the MRI finding of the cervical spine (AR 610-11, 624-25), fairly normal motor strength, prior two years of conservative treatment, and "active social life, shopping, driving, hiking, fishing, and partial parental

responsibility," the ALJ found plaintiff able to sit six hours and lift and carry up to ten pounds occasionally. (AR 29.) The treatment notes consistently documented normal mental status during examination (AR 477-492, 514-25, 570-78, 608-30) and did not support concentration deficits. While the record refers to subjective complaints of inability to tolerate some pain medications, it did not show effect on concentration.

It was further not clear how Dr. Gritzka managed to conclude, with a reasonable degree of certainty, plaintiff would be off-task at least fifteen percent of the time when the claimant had only a few doctor visits between early 2011 and the end of 2014. (AR 29.) Even after January 2015, his routine treatment did not reflect a level of pain that would warrant three or more absences. He had not had frequent emergency room visits, extended hospitalizations, weekly doctor visits, or medication complications that could reasonably justify unauthorized absences. The record reflected an active individual who hikes, goes camping and fishing, walks one mile, goes out to dinner, prepares meals, and spends time with his son, suggesting the purported need to lie down is a symptom magnification. The ALJ found this portion of the opinion no more than conjecture and primarily based on subjective reports. Dr. Gritzka "appeared to have advocated on his client's behalf, rather than rendered an objective assessment of medical evidence[]" and the ALJ declined to accept plaintiff's representative's contention. (*Id.*)

Plaintiff argues the ALJ improperly rejected Dr. Gritzka's opinion as obtained for litigation purposes. As a general matter, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832. "An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Id.* An ALJ may, however, consider the source of a referral for a medical opinion in certain limited circumstances. *See Nguyen v. Chater*, 100 F.3d 1462,

1464-65 (9th Cir. 1996) (that fact an "examination was conducted at the request of an attorney is relevant where the opinion itself provides grounds for suspicion as to its legitimacy."; noting the Court has found the source of a referral relevant "where there is no objective medical basis for the opinion, and where there is evidence of 'actual improprieties' on the part of the doctor whose report the ALJ chooses to reject.") (internal citations to *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988), and *Saelee*, 94 F.3d at 523).

The Court finds no reasonable basis for considering the source of the referral to Dr. Gritzka. Dr. Gritzka conducted an examination and relied, at least in part, on his own and other findings in rendering his opinion, and there is no evidence of actual improprieties. The ALJ therefore erred in relying on the source of this evidence. However, because the ALJ provided several other clear and convincing reasons for rejecting the opinion of Dr. Gritzka, the Court finds the error harmless.

Contrary to plaintiff's contention, the ALJ was not prohibited from relying on the work restriction evidence from Dr. Carpenter. The ALJ properly rejected the restrictions as medical opinion evidence given their temporary nature. *Carmickle*, 533 F.3d at 1165. However, the fact that Dr. Carpenter, a treating physician, on three occasions and in the time period in which the record reflected more severe symptoms restricted plaintiff to modified light duty for temporary periods of time was relevant and properly considered by the ALJ.

Plaintiff also argues the ALJ improperly "played doctor" and that Dr. Gritzka, with possession of the same knowledge of plaintiff's treatment history, activities, and other medical evidence, provided a stronger interpretation than that offered by the ALJ. The Court disagrees. An ALJ may reject a physician's opinion upon finding it inconsistent with the medical evidence, evidence of a claimant's activity, and/or evidence associated with the course of treatment. *See Tommasetti*, 533 F.3d at 1041; *Rollins*, 261 F.3d at 856; 20 C.F.R. §§ 404.1527(c)(4),

416.927(c)(4). The ALJ here rationally interpreted the opinion of Dr. Gritzka as lacking the support of and inconsistent with the medical evidence, inconsistent with plaintiff's numerous and wide ranging activities, and inconsistent with the evidence of his treatment.

An ALJ may also reject the opinion of a physician upon concluding it is based to a large extent on self-reports of a claimant whose testimony the ALJ has properly discounted. *Tommasetti*, 533 F.3d at 1041. The ALJ here reasonably construed portions of Dr. Gritzka's report as based primarily on plaintiff's subjective reports and on conjecture. For example, while Dr. Gritzka clearly attributed the assessment regarding sedentary work and the limitations in standing, walking, sitting, shifting positions, and lifting to plaintiff's diagnoses, his review of records and imaging, the examination, and his experience and expertise, he notably prefaced the limitations in relation to laying down and concentration with a reference to what plaintiff "state[d]" and "complain[ed]" about. (AR 604-04, 607.)

As stated above, while the ALJ should have considered an absence of insurance, the evidence associated with plaintiff's treatment was nonetheless notable in that it reflected plaintiff had received treatment prior to early 2015, but that treatment was sporadic and did not address conditions plaintiff alleges disabled him from working. Nor does the fact Dr. Gritzka was aware of plaintiff's treatment record and activities require the ALJ to adopt his interpretation of the record and assessment of plaintiff's functional limitations. The ALJ rationally interpreted the record and her conclusions have the support of substantial evidence.

<u>Steps Four and Five</u>

Having found no reversible errors for the reasons stated above, plaintiff's mere restating of his arguments does not establish error at step four or step five. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

ORDER
PAGE - 22

## **<u>CONCLUSION</u>**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>3rd</u> day of October, 2018.

Mary Alice Theiler
United States Magistrate Judge